UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Marie Assa'ad-Faltas, M.D., M.P.H., | ) C/A No. 3:11-278-TLW-JRM |
| Plaintiff, | ) |
| vs. | ) Report and Recommendation |
| The honorable **Alan Wilson**, Attorney General of South Carolina; **Glenn McConnell**, President pro tempore of South Carolina's Senate and Chair of South Carolina's Judicial Merit Selection Commissioner [hereinafter "JMSC"]; solely in their official capacities and solely for injunction relief; and the honorable **Jean H. Toal**, Chief Justice of South Carolina, solely in her ceremonial capacity and solely for injunctive relief, | ) |
| Defendants. | ) |

_____

This is a civil action filed *pro se*. Plaintiff has filed an Application to Proceed *In Forma Pauperis* in this case. The case is presently before the undersigned magistrate judge for report and recommendation following pre-service review. Pursuant to 28 U.S.C. §636(b)(1), and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court. *See* 28 U.S.C. § 1915(e)(2)(B); *In Re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997)(pleadings by non-prisoners should also be screened).

**Factual Background**

Plaintiff claims that she cannot get a fair judge in South Carolina and she seeks to bring this action as a class action for injunctive relief against three South Carolina officials, one from each branch of state government. She claims that she was *injured* when an opposing party in one of her

state-court cases contacted a state legislator and, as a result, she was treated unfairly by judges in certain undisclosed state court cases.¹ She seeks a declaratory judgment that the South Carolina system for electing judges through the use of a Judicial Merit System Commission (JMSC) is unconstitutional as a violation of "separation of powers," and "Article IV, Section 4 of the U.S. Constitution"(guarantees "republican form of government"). She also claims that the State's current system of judicial selection violates "due process" as applied against her and her class of legal immigrants who are subjected to state jurisdiction, but not allowed to vote for state legislators. As relief, Plaintiff seeks an injunction requiring South Carolina to change its way of appointing judges to require appointment by the Supreme Court or election by citizens' votes.²

## Pro Se Review

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint filed by Plaintiff in this case. The review was conducted pursuant to 28 U.S.C. § 1915 (as amended), and other provisions in the Prison Litigation Reform Act. The review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712

---

¹ *See* Civil Action Nos. 3:10-3294-TLW-JRM; 3:10-3014-TLW-JRM; 3:10-1985-TLW-JRM. In these cases, Plaintiff has already been informed that this Court is not the proper place to come to seek review of the outcome of a civil action in state court, *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476-82 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and or of anything other than limited habeas corpus review of any state criminal proceedings or conviction. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *Younger v. Harris*, 401 U.S. 37 (1971).

²Plaintiff also sought an injunction to prevent appointment of a Richland County judge that was supposed to be made on the day she filed the case. She did not ask for any type of expedited review of her filings and that judicial position was filled. Accordingly, to the extent that she sought an injunction prohibiting the appointment, her request for relief is moot.

F.2d 70 (4th Cir. 1983).

This Court is required to construe *pro se* complaints liberally. Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89 (2007). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F. 3d 630, 630n.1 (4th Cir. 2003). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Department of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Even under this less stringent standard, the Complaint filed in this case is subject to summary dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

## **Legal Analysis**

Initially, this case cannot proceed as a class action because Plaintiff, as a *pro se* litigant, may not represent other persons besides herself. Secondly, Plaintiff's allegations fail to sustain her burden of proving that she has standing to bring this lawsuit and seek the relief she seeks. Finally, even if the Court were to assume (without deciding), that Plaintiff has sufficient personal, and individual standing to bring this lawsuit, the Complaint allegations do not satisfy the four-part requirements for application of the *Ex parte Young*, 209 U.S. 123 (1908) exception to the doctrine of sovereign immunity. As a result, Plaintiff's claim that South Carolina's judicial-selection process violates the federal constitution is barred by the doctrine of sovereign immunity.

1. **<u>No class action</u>**:

First, although she did not file a separate motion seeking class certification, Plaintiff states within the caption and the body of her Complaint that she is seeking to sue on her own behalf as well as on behalf of "a class of legal immigrants who cannot vote in South Carolina but must appear in its courts." (ECF No. 1, Compl. 1). It is well established that *pro se* litigants may only appear in federal court on their own behalf; they do not have standing to assert claims on behalf of any other person or entity. Thus Plaintiff allegations about representation of "her class" or any "members" of any class are being disregarded. *See Laird v. Tatum*, 408 U.S. 1 (1972); *see also Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 482 (1982); *Flast v. Cohen*, 392 U.S. 83, 99 (1968); *Hummer v. Dalton*, 657 F.2d 621, 625-26 (4th Cir. 1981)(a *pro se* litigant cannot act as a "knight-errant" for others); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)(same); *McNeil v. Guthrie*, 945 F.2d 1163, 1164 (10th Cir. 1991).

2. **<u>Lack of standing</u>**:

Second, Plaintiff's allegations do not show that she has standing to bring this lawsuit and to ask this Court to declare South Carolina's judicial selection process violative of the federal constitution's separation of powers doctrine, the guarantee clause, and the due process/equal protection provisions. "The requirement of standing . . . has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Standing is a strict

jurisdictional requirement, rigorously enforced when the court must decide if the government's actions are unconstitutional. *Id.* at 819-20. Stated differently, the "irreducible constitutional minimum" of Article III's case-or-controversy requirement contains three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Committee to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir.1996). First, the plaintiff must have suffered an "injury in fact" that is "concrete" rather than "conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Second, the plaintiff must show that there is a "causal connection between the injury and the conduct complained of." *Id.* Finally, the plaintiff must show that it is "likely," and not merely "speculative," that the injury complained of will be "redressed by a favorable decision." *Id.,* 504 U.S. at 561. The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. *Id.* As Plaintiff failed to allege a "particularized injury," that is "likely to be redressed by the requested relief," she has no standing to make this claim. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *McCall v. Dretke*, 390 F.3d 358, 361-62 (5th Cir. 2004)(habeas case).

Accepting her allegations as true, as we must at this stage of litigation, the *injury* that Plaintiff asserts in this case is that she is/was forced to participate in unfair legal proceedings in Richland County, South Carolina. She claims that her filings are ignored and her motions are not promptly heard because a state legislator who sits on the JMSC has in some undisclosed way caused all Richland County judges to be "chilled" to such an extent that nothing is being done in Plaintiff's case or cases. Since she already knows that this Court cannot sit in review of a state civil court's proceedings or interfere in a state criminal court's process, *see supra* note 2, she also must be aware that consideration of any "particularized injury" arising from specific rulings or lack of rulings made in her personal cases is barred by existing federal law. Thus, it could be said that by re-framing the

5

nature of her "injury" as one arising from South Carolina's judicial selection process, as opposed to from rulings from the specific judges or actions of opposing counsel in her cases, Plaintiff is improperly attempting to bootstrap the same claims she unsuccessfully attempted to pursue in prior cases in this Court and to encourage this Court to violate the *Rooker-Feldman* Doctrine or the *Younger v. Harris* opinion. Without ascribing any such ulterior motives to Plaintiff's submission of this case, the undersigned interprets Plaintiff's allegations about specific things that occurred or did not occur in her state cases as only proffered examples in support of her broader claim that the state's judicial selection process is unconstitutional under the federal constitution's separation of powers doctrine and the "guarantee clause."

The problem with such a broad claim of unconstitutionality of an important state process that was approved in 1997 by the voters of the state; included in Article V, section 27 of the state constitution; and recently found valid by the South Carolina Supreme Court is that is does not show a "particularized injury." *See Segars-Andrew v. Judial Merit Selection Comm'n*, 691 S.E. 2d 453, 457-58 (S.C. 2010); *see also* S.C. Code Ann. § 2-19-10 (establishing terms, membership, etc. for JMSC). Instead, it represents a claim that is more like "an impermissible 'generalized grievance,' . . . 'because the impact [of an allegedly biased judiciary] on [Plaintiff] is plainly undifferentiated and 'common to all members of the public.' " *United States v. Richardson*, 418 U.S. 166, 171, 176-77 (1974)(quoting from *Ex parte Levitt*, 302 U.S. 633, 636 (1937)(no particularized individual injury caused by method of judicial appointment)). All South Carolina citizens and residents, including persons such as Plaintiff who are non-citizens legally residing in the state, have an interest in a fair, properly functioning judiciary; thus, eliminating, as this Court must, any consideration of the specifics of her Richland County cases, Plaintiff's allegations fail to show any "particularized

injury" from an alleged unfair process that is not also suffered by the public in general. *See Lance v. Coffman*, 549 U.S. 437, 440-42 (2007); *Ex parte Levitt*. This finding, in itself, precludes a finding that Plaintiff has standing to bring this lawsuit; however, Plaintiff's allegations also fail to satisfy the "redressability" aspect of the standing doctrine.

Assuming, without deciding, that Plaintiff's allegations about the problems in her Richland County cases are sufficient to show the required "particularized injury" caused by the state of South Carolina's judicial selection process, Plaintiff still lacks standing because her allegations do not show how the relief she requests (a complete overhaul of the South Carolina judicial-selection process) would "likely" redress her claimed injury. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 106-09 (1998); *Raytheon Co. v. Ashborn Agencies, Ltd.*, 372 F.3d 451, 454 (D.C. Cir. 2004). There is nothing in Plaintiff's allegations showing that a new selection process would necessarily result in un-biased (or somehow "better") judges, thus, any assertion that Plaintiff's claimed injury would be "fixed" or redressed by having a different selection process is entirely speculative. *See Lujan*, 504 U.S. at 560; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 348-49 (2006). Accordingly, since Plaintiff failed to carry her burden of showing that she has standing to pursue the claims made in this Complaint, this case should be summarily dismissed.

3. **Sovereign Immunity/Ex parte Young**:

Finally, even if Plaintiff's allegations were sufficient to establish her standing to bring this lawsuit, her claim is barred by the doctrine of sovereign immunity. State sovereign immunity is a bedrock principle of "Our Federalism." *Younger v. Harris*, 401 U.S. 37, 44 (1971). The "central purpose" of the sovereign immunity doctrine "is to 'accord the States the respect owed them as' joint sovereigns." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002) (quoting *Puerto*

*Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)). When the Constitution "split the atom of sovereignty," *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (Kennedy, J., concurring), the states "did not consent to become mere appendages of the Federal Government," *Fed. Mar. Comm'n*, 535 U.S. at 751. Rather, they consented to a system of dual sovereignty, and the states therefore "entered the Union 'with their sovereignty intact.'" *Id.* (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779 (1991)). Along with their status as sovereigns, the states retained "the dignity and essential attributes inhering in that status." *Alden v. Maine*, 527 U.S. 706, 714 (1999). One of those essential attributes of sovereignty retained by the states is immunity from suit absent their consent. *See Fed. Mar. Comm'n*, 535 U.S. at 751-52; *Alden*, 527 U.S. at 715-19; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). While the Eleventh Amendment reflects this foundational principle of sovereign immunity, the Amendment does not define the immunity's scope. *See Alden*, 527 U.S. at 727-30. Exceptions to the states' sovereign immunity do exist, however. *See Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 291-92 (4th Cir. 2001). Only one those exceptions are pertinent here: the states' sovereign immunity "does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." *Id.* at 292 (citing *Ex parte Young*).

  Clearly, Plaintiff is aware of the *Ex parte Young* exception to sovereign immunity and has tried to plead within it by expressly suing the individual state officials, but in their "official capacities" and seeking only injunctive and declaratory relief. Even though she sues the Attorney General in his "official capacity," the Chairman of the JMSC in his "official capacity," and the Chief Justice of the Supreme Court in her "ceremonial capacity," unless the relief requested satisfies the requirements of the *Ex parte Young* "prospective injunction" exception she is still suing the state

8

itself because these officials do the State's work and her claim is barred by the general doctrine of sovereign immunity.

Relevant case law establishes four considerations to be addressed by a court faced with the decision of whether or not a pleading satisfies the *Ex parte Young* exception: (1) the court determines whether the action is against state officials or the state itself; (2) the court looks at whether the alleged conduct of the state officials constitutes a violation of federal law; (3) the court assesses whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the state treasury; and (4) the court analyzes whether the suit rises to the level of implicating special sovereignty interests. *Opala v. Watt*, 454 F.3d 1154, 1158 (10th Cir. 2006).      Insofar as this particular case is concerned, since the Court should not concern itself with "the merits" of Plaintiff's claim when deciding whether or not *Ex parte Young* is satisfied. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002). The first two considerations appear to be sufficiently covered by Plaintiff's allegations: 1) she has sued only state officials, and 2) she has alleged that the officials are violating federal law by participating in an allegedly unconstitutional judicial-selection process. The problems in this case arise with regard to the third and fourth considerations because of the nature of the relief requested. Even though, on the surface of the Complaint, Plaintiff asks only for declaratory and injunctive relief, the nature of the injunctive relief requested is such that it calls into serious question whether or not it is truly *prospective* in nature and whether it improperly impacts South Carolina's important sovereignty interests.

It has been held that the application of the fourth consideration to deny *Ex parte Young* application: a determination that the suit "rises to the level of implicating special sovereignty

interests" should be limited to the "particular and special circumstances" where to grant the relief requested would affect a state's special sovereign interests "in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its treasury." *Idaho v. Coeur d'Alene Tribe of Id.*, 521 U.S. 261, 288 (1997). According to at least one court,

> the *Coeur d'Alene* exception to application of *Ex parte Young* doctrine for cases in which a special state sovereignty interest is implicated requires a two-step inquiry: first, the court must determine whether the relief requested implicates a *special or core* state sovereignty interest; if the first requirement has been satisfied, then the court must proceed to examine whether the relief sought is so intrusive upon the state's sovereignty that it constitutes the functional equivalent of relief the Eleventh Amendment bars.

*Martin v. Taft*, 222 F. Supp. 2d 940, 961 (S.D. Ohio 2002)(emphasis added)(citations omitted)(collecting cases). The special state interests that may call the *Coeur d'Alene* holding into play have been described as "'core . . .essential . . . fundamental . . . .'" *Bickford v. Lodestar Energy, Inc.*, 310 B.R. 70, 75 (E.D. Ky. 2004)(citations omitted)(collecting cases).

Plaintiff's claims and the relief sought in this case represent the kind of particular and special circumstances that require application of the *Couer d'Alene* holding. To grant the relief sought in this case would require this Court to tell South Carolina that it cannot continue to implement the choice it and its citizens made when they voted in 1997 to amend the state constitution in order to change the method by which it carries out its "core sovereign interest" of establishing and maintaining its judiciary. Operation of a judiciary is "essential" and "fundamental" to the operation of the State itself. In order to operate a judiciary, there must be an approved method by which judges are selected. Were this Court to order the officials who are sued to completely change the State's current judicial-selection process, their doing so would necessarily involve the state treasury because special state-wide elections would have to set up and/or the state Supreme Court would need

to add staff to work on and additional procedures to govern judicial selection issues. Money from the state treasury would certainly be required to implement the "injunctive relief" requested, thus making the relief more in the nature of the type of monetary relief against the State that the doctrine of sovereign immunity is designed to prevent. Additionally, such "relief" would require federal intervention that will seriously impact the operations and management of all three of the State of South Carolina's governmental branches (Executive, Legislative, Judicial). As a result, an award of the requested injunctions would implicate the State itself, not only the individual officials currently listed as Defendants. As the *Couer d'Alene* Court stated: "The dignity and status of its statehood allow the State to rely on its Eleventh Amendment immunity and to insist upon responding to these claims in its own courts, which are open to hear and determine the case." 521 U.S. at 287-88. Because the *Ex Parte Young* exception cannot apply to the type of claim Plaintiff makes in this case, assuming without deciding that she has standing to bring it, sovereign immunity applies and bars her cause of action and requires summary dismissal of this case.

## RECOMMENDATION

Accordingly, it is recommended that the District Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process. *See United Mine Workers v. Gibbs,* 383 U.S. 715 (1966); *see also Neitzke v. Williams*, 490 U.S. at 324-25.

Plaintiff's attention is directed to the important notice on the next page.

Joseph R. McCrorey
United States Magistrate Judge

March 7, 2011
Columbia, South Carolina

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).